IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARREN S.,[1]                                          Case No. 3:23-cv-00364-SB

             Plaintiff,                       **OPINION AND ORDER**

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

---

**BECKERMAN, U.S. Magistrate Judge.**

      Darren S. ("Plaintiff") brings this appeal challenging the Commissioner of Social

Security's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to

42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court affirms the

Commissioner's decision because it is free of harmful legal error and supported by substantial

evidence.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court may set aside a denial of benefits only if the Commissioner's findings are "not supported by substantial evidence or based on legal error." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "may not substitute [its] judgment for the [Commissioner's]." *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

**BACKGROUND**

**I.    PLAINTIFF'S APPLICATION**

Plaintiff was born in March 1963, making him fifty-five years old on October 8, 2018, his alleged disability onset date.[2] (Tr. 38, 50, 61, 87, 105.) Plaintiff is a high school graduate who

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty-quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016, 2008 WL 4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.*

has an associate's degree in computer electronics and past relevant work experience as a heating, ventilation, and air conditioning ("HVAC") installer and carpenter helper. (*Id.* at 50, 65-66, 80-81, 234.) In his application, Plaintiff alleges disability due to degenerative disc disease, spinal stenosis, osteoarthritis in his hands, seizures, and cerebellar ataxia.[3] (*Id.* at 41, 64, 87, 102, 106, 233.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on June 8, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 38.) On December 7, 2020, Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ. (*Id.* at 61-86.) On February 11, 2021, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 38-52.) On August 10, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 26-31.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

(citations omitted). Thus, Plaintiff's date last insured ("DLI") of December 31, 2023 (Tr. 38) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before December 31, 2023, he is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

[3] "Cerebellar ataxia is the failure of muscular coordination due to disease of the cerebellum." *Butland v. Sec'y of Dept' of Health & Human Servs.*, No. 07-111V, 2009 WL 1949059, at *2 n.17 (Fed. Cl. June 19, 2009); *see also Skotnicki v. Bd. of Trs. of the Univ. of Ala.*, 631 F. App'x 896, 897 (11th Cir. 2015) (noting that cerebellar ataxia is "a neurological condition that affects gait and balance").

which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 38-52.) At step one, the ALJ concluded that Plaintiff had "engaged in substantial gainful activity . . . [from] October 2018 through December 2018" but Plaintiff "did not engage in substantial gainful activity from January 2019 through the date of [the ALJ's] decision." (*Id.* at 40-41.) At step two, the ALJ found that Plaintiff suffers from the following severe, medically determinable impairments: "[D]egenerative disc disease with mild stenosis, osteoarthritis of the

PAGE 4 – OPINION AND ORDER

hands, seizures, and cerebellar ataxia[.]" (*Id.* at 41.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 43.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff can occasionally "climb ramps and stairs but never [climb] ropes, ladders or scaffolds," (2) Plaintiff can "frequently handle with the left upper extremity and frequently finger with the right upper extremity," and (3) Plaintiff should not be "expos[ed] to workplace hazards and unprotected heights." (*Id.* at 44.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work as an HVAC installer and carpenter helper. (*Id.* at 50.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a hospital housekeeper, food tray assembler, and lot attendant. (*Id.* at 51.) As an alternative step-five finding, the ALJ explained that given the VE's testimony on Plaintiff's "transferrable skills from his past work[, which] include[s] knowledge of HVAC supplies and equipment, [Plaintiff] can do the light exertion job of HVAC materials supply salesperson[.]" (*Id.*)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in four principal ways. First, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. (Pl.'s Opening Br. at 7-13, ECF No. 13.) Second, Plaintiff argues that the ALJ did not provide any reasons for failing to account for the lay witness testimony from Plaintiff's brother. (*Id.* at 12-13.) Third, Plaintiff argues that substantial evidence does not support the ALJ's discounting of the opinions of Plaintiff's physician's assistant, Andrew Chin

("Chin"). (*Id.* at 7-9.) Fourth, Plaintiff argues the ALJ erred in finding that Plaintiff has transferrable work skills. (*Id.* at 5-7.)

As explained below, the Court concludes that the ALJ's decision is free of harmful legal error and supported by substantial evidence. The Court therefore affirms the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Def.'s Br. at 9, ECF No. 17, representing that "no malingering exists" here; Tr. 45, reflecting the ALJ's determination that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"). As such, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's

symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ satisfied that standard here.

### 1.    Effective Treatment

Substantial evidence supports the ALJ's discounting of Plaintiff's testimony on the ground that Plaintiff's seizures were well controlled with medication. *See generally Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("[T]he threshold for [substantial] evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019))).

It is well settled that an ALJ may discount a claimant's testimony based on evidence that his symptoms improved with treatment or were well controlled with medication. For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with "record evidence that her kidney disease had improved, record evidence that her hypertension was under control, and record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

Similarly, in *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 649 (9th Cir. 2019), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's testimony regarding her limitations. *Id.* The Ninth Circuit noted that the ALJ appropriately found that the claimant's testimony that "her left leg improved only slightly and her right leg did not

really improve following her knee replacement surgeries . . . conflicted with [her] self-reports to treatment providers and with the objective indicia of improvement in her medical record." *Id.*; *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (holding that the ALJ provided clear and convincing reasons to discount the claimant's symptom testimony, including "treatment efficacy[] and longitudinal improvement"); *Walker v. Kijakazi*, No. 22-35351, 2023 WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (holding that substantial evidence supported that the claimant's "pain improved after treatment and medication"); *Torres v. Saul*, 798 F. App'x 979, 981 (9th Cir. 2019) ("The [ALJ] proffered specific, clear, and convincing reasons for discounting [claimant's] pain and limitations testimony because the record showed that [her] conditions improved with treatment and were less severe than alleged.").

Consistent with these authorities, the ALJ here appropriately discounted Plaintiff's symptom testimony on the ground that his seizures are well controlled with medication. (*See* Tr. 47-48.) In doing so, the ALJ emphasized that in a function report dated July 28, 2019, Plaintiff provided the following statement on how his illnesses, injuries, or conditions limited his ability to work: "Not released to return back to work [because of seizures]." (Tr. 47, quoting "Exhibit 6E/1," i.e., Tr. 245.) The ALJ further explained that the record evidence demonstrated that Plaintiff "likely had a seizure in October 2018 . . . [and] a witnessed seizure in January 2019 *after* he had stopped taking Keppra in November 2018," but there is "no evidence of ongoing seizures after [Plaintiff's] January 2019 episode" and the "medical evidence of record shows [that Plaintiff's] seizures are controlled on medication [i.e., Keppra]." (*Id.* at 47-48) (emphasis added).

///

Substantial evidence supports the ALJ's discounting of Plaintiff's testimony based, in part, on his seizures being well controlled with medication:

- May 24, 2019: Plaintiff filed his DIB application and alleged a disability onset date of October 8, 2018 based primarily on "[s]eizure[s]." (*See id.* at 87-88, 106, 233, reflecting as much and that Plaintiff added that he "had a car accident [in October 2018 but was] not sure if it [was] the accident or seizure that caused [the] accident," and he believed that his "car was defect[ive]").

- January 3, 2019: Plaintiff's physician, Jimmy Abraham Thomas, M.D. ("Dr. Thomas"), completed a discharge summary and final report regarding Plaintiff's last seizure. (*Id.* at 371-73.) Dr. Thomas noted that Plaintiff had "experienced a witnessed seizure at his workplace" the previous day, and that after Plaintiff had "a seizure in early October" 2018, which caused him to "driv[e] off the road, into a tree and total[] his Suburban," Plaintiff's physician consulted with the neurology department and "started [Plaintiff] on Keppra," a seizure medication. (*Id.* at 371.) Dr. Thomas stated that Plaintiff "[s]hould be on Keppra but ha[d] been off his med[ication] for the past month," and that "[u]nfortunately, at the end of [his thirty-]day prescription, [Plaintiff] did not renew his Keppra and consequently, ha[d] been off the medication for at least a month."[4] (*Id.* at 371-72.) Dr. Thomas added that he had advised Plaintiff to "wean himself

---

[4] Similar to Dr. Thomas, in addressing the medical opinion evidence, the ALJ reiterated that Plaintiff has been "seizure free since . . . being compliant with his medications," and that Plaintiff was "non-compliant with anti-seizure medications prior to his [last] episode[.]" (Tr. 48.)

off []his habit [of drinking] over the course of the next month as the alcohol [was] only worsening his predisposition to seizures," and "advised [Plaintiff] the same as regards [to] his use of cannabis." (*Id.* at 372-73; *see also id.* at 67, showing that as of December 7, 2020, Plaintiff was using "[m]aybe a half a gram [of marijuana per] day" and drinking "one, two beers a day").

- May 22, 2019: Plaintiff's neurologist, Richard Rosenbaum, M.D. ("Dr. Rosenbaum"), noted that Plaintiff's "seizures [were] now quiescent on [Keppra]," he advised Plaintiff that "he need[e]d to be seizure free for [six] months before resuming driving and other potentially dangerous activities," and he "filled out a disability form for [Plaintiff]" but if Plaintiff "remain[ed] free of seizures, it [was] reasonable to resume driving [on July 2, 2019]." (*Id.* at 779.)

- July 2, 2019: The Oregon Department of Motor Vehicles ("DMV") allowed Plaintiff to resume driving. (*See id.* at 65, reflecting that on December 7, 2020, Plaintiff testified that he received his driver's license "back from [the Oregon] DMV . . . about seven months after [his last] seizure, which happened [on] January the 3rd, [2019], two years ago, basically, [or a] year and nine months [ago]").

- April 7, 2020: Plaintiff declared under penalty of perjury that he takes "Keppra 500 mg" to treat his seizures, he had not had a seizure in the past year, and his last seizures occurred in October 2018 and early January 2019. (*Id.* at 288-89.)

- August 18, 2020: Chin stated that "[e]ven though [Plaintiff's] seizures are well controlled, [Plaintiff's seizure disorder] remains, and he should not be working at any height and should not work on ladders and scaffolding." (*Id.* at 885; *cf. id.* at 44, noting that the ALJ's RFC assessment limited Plaintiff to work that did not involve, among other things, "exposure to workplace hazards and unprotected heights" or climbing of "ropes, ladders, or scaffolds").

- December 7, 2020: During the hearing before the ALJ, Plaintiff's counsel stated that Plaintiff "recently . . . had some seizures" but the seizures were "under control," Plaintiff testified that before his October 2018 and January 2019 seizures, it had been forty-two "years [since Plaintiff] had the last seizure," and Plaintiff confirmed that "since [he] started taking [seizure] medication [i.e., Keppra], [his] seizures [have been] under control." (*Id.* at 64, 77.)

- February 11, 2021: The ALJ's RFC determination accounted for Chin's seizure-related opinions on heights, ladders, and scaffolding. (*See id.* at 44, 48, 50.)

Given this timeline, substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on his seizures being well controlled with medication. Plaintiff does not offer any meaningful argument to the contrary and instead focuses on matters addressed below, such as Plaintiff's cerebellar ataxia. (*See* Pl.'s Opening Br. at 9-12; Pl.'s Reply Br. at 6-7, ECF No. 21.)

///

PAGE 11 – OPINION AND ORDER

Relatedly, the ALJ also appropriately evaluated the effects of Plaintiff's treatment for seizures, such as medication side effects. An "ALJ must assess all relevant evidence, such as the 'effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)' in reaching an RFC determination." *Curtiss v. Kijakazi*, No. 22-35371, 2023 WL 3918687, at *2 (9th Cir. June 9, 2023) (quoting SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). The ALJ did just that.

Specifically, the ALJ observed that in his July 28, 2019 function report, Plaintiff states that his seizure medication (i.e., levetiracetam, also known as Keppra) causes the side effects of "dizziness and balance problems." (Tr. 48, citing Tr. 251.) The ALJ, however, explained that Plaintiff's May 22, 2019 visit with his neurologist, Dr. Rosenbaum, "show[s] this medication causes [Plaintiff] no side effects." (*Id.* at 48, citing Tr. 251 and Tr. 527; *cf. id.* at 527, indicating that Dr. Rosenbaum stated that Plaintiff "takes levetiracetam without side effects"). "Where there is conflicting evidence in the record, the ALJ is entitled to resolve that conflict." *Johnson v. Kijakazi*, No. 22-15066, 2022 WL 17500300, at *1 (9th Cir. Dec. 8, 2022); *see also Streeter v. Saul*, 835 F. App'x 305, 306 (9th Cir. 2021) (noting that an ALJ must "[r]eview[] the record as a whole, and fulfill[] the obligation to resolve conflicts and ambiguities in the record"); *Waterhouse v. Berryhill*, 748 F. App'x 129, 131 (9th Cir. 2019) (stating that "it is within the ALJ's province to resolve conflicts in the testimony and ambiguities in the record" (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015))). Notably, Plaintiff does not argue that the ALJ erred in resolving the conflict between Plaintiff's function report and Dr. Rosenbaum's treatment notes. (*See* Pl.'s Opening Br. at 3, 13; Pl's Reply at 8, summarizing the lay witness testimony from Plaintiff's brother, who cited dizziness, mood swings, and instability

on ladders as seizure medication side effects, but declining to address the ALJ's resolution of this conflict (citing Tr. 274)).

### 2.    Plaintiff's Reported Activities

Plaintiff argues that the ALJ erred in discounting his testimony on the ground that he engaged in activities incompatible with the reported severity of his symptoms. (Pl.'s Opening Br. at 10.) Plaintiff emphasizes that the activities the ALJ cited in her decision, such as Plaintiff's ability to drive multiple times a week, are "not inconsistent" with his testimony regarding his inability to walk and stand "well enough" to sustain gainful employment. (*Id.* at 10-11.) The Court disagrees.

Under Ninth Circuit caselaw, an ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of his symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination"); *Garrison*, 759 F.3d at 1016 (stating that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). But there must be a meaningful inconsistency between the claimant's reported activities and symptom testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's testimony, and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony").

The ALJ determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are inconsistent because they differ from the evidence of record." (Tr. 47.) The ALJ explained that Plaintiff's seizures were well controlled on medication,

stated that there was "no evidence of ongoing seizures after the January 2019 episode," and resolved the conflict about Plaintiff's reported seizure medication side effects of dizziness and balance problems. (*Id.* at 47-48; *cf. id.* at 244-45, 251, reflecting that in his adult function report, Plaintiff focused primarily on his allegedly disabling seizures and cited the seizure medication side effects of dizziness and balance problems). In addition to the foregoing, the ALJ also emphasized that Plaintiff testified that he has "resumed driving and drives multiple times a week." (*Id.* at 48; *see also id.*, turning to the opinion evidence and reiterating that Plaintiff's allegations are "not supported by the totality of medical evidence of record and his activities of daily living").

Although he acknowledges that he "started driving again" in July 2019 (i.e., less than a year after his car accident and last seizure), Plaintiff argues that "the main issue for him now is dizziness and falling" and his driving activities are "not inconsistent" with his testimony regarding the severity of his standing and walking limitations. (Pl.'s Opening Br. at 10-11, citing Tr. 65-66.) In the Court's view, the ALJ's finding that Plaintiff engaged in activities incompatible with his symptom testimony is rational and must be upheld. *See Vazquez v. Kijakazi*, No. 22-35642, 2023 WL 5453198, at *1 (9th Cir. Aug. 24, 2023) ("[The claimant] contends that the [ALJ's reliance on a] long list of activities is deceptive, as she does not perform all of them every day and she is able to perform them at her own pace. Nevertheless, the ALJ's alternative interpretation of [the plaintiff's] daily activities is at least equally rational, and the reasoning is legally sufficient." (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020))); *Ford*, 950 F.3d at 1154 ("If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005))).

The longitudinal record supports this conclusion. For example, during the December 7, 2020 hearing, Plaintiff testified that he drives "[a]s little as possible," which, as the ALJ noted in her decision, means that Plaintiff "might make two trips, maybe three trips into town [per] week." (Tr. 65.) Plaintiff also testified that he makes weekly trips into town for groceries and "supplies." (*Id.* at 68.) Similarly, around the time that he resumed driving, Plaintiff reported that he went outside every day, he walked or drove a car when he needed to travel, he shopped for "food [and] household supplies" for two hours each week, he visited the grocery store on a regular basis, and he could walk a mile before needing to stop and rest for ten to fifteen minutes. (*Id.* at 248-50.)

It was reasonable for the ALJ to discount Plaintiff's symptom testimony based on his reported driving activities. The record reflects that Plaintiff lives "out in the country" and must drive approximately sixteen miles each time he goes into town. (*See* Tr. 373, documenting concerns about Plaintiff's temporary inability to drive "given that he lives [eight] miles out in the country"). Plaintiff's reported driving activities are incompatible with the alleged severity of his symptoms, as they would involve the primary head movements that he cited as dizziness triggers.[5] (*Cf. id.* at 66-67, reflecting that Plaintiff testified that it was "mostly the dizziness that[] [was currently] preventing [him] from working," and that he did not "feel comfortable even crossing the street to check [the] mail because . . . if [he] look[s] both ways real quick [for oncoming traffic] and then start[s] to walk across [the street, he] get[s] dizzy . . . [and does not]

---

[5] "The Court is not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely, but the Court is permitted to consider additional support for a ground on which the ALJ relied." *Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (citing *Warre*, 439 F.3d at 1005 n.3). Thus, in assessing whether substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on his driving, the Court may consider the distance Plaintiff reported traveling and general head movements involved when driving.

want to fall in the middle of the road and get ran over"; *id.* at 74, showing that Plaintiff testified

that "looking up, . . . looking down, or going side to side causes [his] dizziness problem to

happen"; *see also id.* at 893, noting that Plaintiff reported "[d]izziness with some falls" and that

his "[l]ightheadedness [and feeling] 'weak in the knees' has been occurring [since the 2018] car

accident").

        For these reasons, the ALJ's finding that Plaintiff engaged in activities incompatible with

his symptom testimony is rational and must be upheld. *See Ford*, 950 F.3d at 1154 ("If the

evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that

must be upheld.'" (quoting *Burch*, 400 F.3d at 679)); *Crawford v. Berryhill*, 745 F. App'x 751,

753 (9th Cir. 2018) (rejecting objections to the ALJ's findings that "amount[ed] to advocating

for alternatives to the ALJ's rational interpretation of the record and therefore [did] not

demonstrate error").

### 3.    Remaining Considerations

        The parties also dispute whether the ALJ erred in discounting Plaintiff's testimony based

on, among other things, certain test results and Plaintiff's decision to decline physical therapy.

(*See* Def.'s Br. at 11, arguing that the ALJ appropriately evaluated Plaintiff's testimony in light

of various evidence, including that "Plaintiff declined physical therapy for ataxia," a condition

Dr. Rosenbaum described as "non-progressive," and Plaintiff's normal Dix-Hallpike and

Romberg tests; Pl.'s Reply at 7, maintaining that the ALJ did not provide sufficient explanations

for discounting Plaintiff's testimony).[6] The ALJ described such evidence in the portion of her

---

        [6] "The Dix-Hallpike test, or maneuver, is used to check for a common type of vertigo
called benign paroxysmal positional vertigo." *Zackary C. v. Kijakazi*, No. 22-cv-00065, 2023
WL 5550118, at *5 n.2 (D. Mont. Aug. 29, 2023) (citation omitted). "The Romberg test is an
indication of 'loss of sense of position' in which the patient loses balance when standing erect
with his eyes closed." *Young v. Astrue*, No. 09-cv-00023-AC, 2010 WL 331781, at *5 n.3 (D.
Or. Jan. 21, 2010) (citation omitted).

decision devoted to Plaintiff's testimony. (*See* Tr. 47, noting that Plaintiff's "Romberg and Dix-Hallpike" tests "were normal" and Plaintiff "declined physical therapy for his ataxia" (citing Tr. 896 and Tr. 797)).

A claimant's decision to decline physical therapy and conflicting test results may serve as clear and convincing reasons for discounting the claimant's symptom testimony. For example, in *Rangrej v. Berryhill*, 728 F. App'x 612, 614 (9th Cir. 2018), the Ninth Circuit held that the ALJ satisfied the clear and convincing reasons standard, including by noting that the plaintiff was "not receptive to recommended physical therapy." *Id.*; *see also Kirk M. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01663-HZ, 2018 WL 6651525, at *8 (D. Or. Dec. 19, 2018) (holding that the ALJ satisfied the clear and convincing reasons standard, and explaining that the "ALJ noted that [the claimant] declined physical therapy for his shoulder"). Further, in *Zackary C.*, the district court explained that "contrary to [the claimant's] testimony that [he] has difficulty walking, feels [im]balanced, and sometimes falls into things, the ALJ cited medical records showing," among other things, the claimant's "normal results on Dix-Hallpike." 2023 WL 5550118, at *6.

It is not clear to the Court if the ALJ's citations to comparable evidence in this case (*see* Tr. 47) were intended to serve as bases for discounting Plaintiff's testimony. *Cf. Michelle L.P. v. Saul*, No. 5:19-cv-01914, 2020 WL 7027536, at *5 n.4 (C.D. Cal. Nov. 27, 2020) (noting that "when summarizing the medical records, the ALJ briefly noted [that the claimant] 'declined physical therapy' . . . , but the ALJ never mentioned this as a basis for discounting plaintiff's allegations," and stating that under Ninth Circuit case law, a summary alone is legally insufficient). The Court need not resolve this issue because, as discussed above, the ALJ

PAGE 17 – OPINION AND ORDER

provided other clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony.

### 4.    Conclusion

In sum, the Court concludes that the ALJ provided clear and convincing reasons for discounting Plaintiff's symptom testimony, and did not commit harmful error. *See Jones v. Saul*, 818 F. App'x 781, 781-82 (9th Cir. 2020) (holding that the ALJ provided clear and convincing reasons for discounting the claimant's testimony and thus "[a]ny error in the ALJ's additional reasons for discounting [the claimant's] symptom testimony [were] harmless"); *see also Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence" for doing so); *Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) (noting that an error is harmless if the ALJ "provided at least one valid reason to discount [the] testimony") (citation omitted); *Johaningmeier v. Berryhill*, No. 3:16-02027-AC, 2018 WL 385035, at *6 (D. Or. Jan. 11, 2018) (agreeing that the ALJ did not commit harmful error in discounting the claimant's testimony because "the ALJ provided at least one other clear and convincing reason").

## II.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by failing to address, or provide any reason for discounting, the lay witness testimony from Plaintiff's brother. (Pl.'s Opening Br. at 12-13.) The Commissioner responds that the new regulations do not require ALJs to articulate how they considered evidence from a nonmedical source like a lay witness, and thus the ALJ was not required to provide any reasons (germane or otherwise) for discounting Plaintiff's brother's testimony. (Def.'s Br. at 15-17, quoting 20 C.F.R. §§ 404.1520c(d)). Alternatively, the Commissioner argues that any error was harmless under the circumstances presented here. (*Id.* at

17-20.) The Court agrees with the Commissioner that to the extent the ALJ erred, any error was harmless.

### A.    Applicable Law

The new regulations "provid[e] that an ALJ is 'not required to *articulate* how [he] considered evidence from nonmedical sources[.]'" *Stephens v. Kijakazi*, No. 22-35998, 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023) (emphasis added) (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). The Ninth Circuit recently recognized that it has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations." *Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (stating as much and finding it unnecessary to decide the issue because "any error would be harmless").

In at least two unpublished opinions, the Ninth Circuit has appeared to endorse the position that the Commissioner advances. In *Kennedy v. O'Malley*, No. 22-35866, 2024 WL 242992, at *1-2 (9th Cir. Jan. 23, 2024), for example, the claimant argued that the ALJ improperly discounted lay witness testimony (i.e., a statement that a Social Security Administration field office employee issued after conducting an in-person interview of the claimant). *Id.*; *see also David I. K. v. Comm'r Soc. of Soc. Sec.*, No. 3:21-cv-05904, 2022 WL 4008216, at *4 (W.D. Wash. Sept. 2, 2022) (describing the statement and additional factual circumstances). In affirming the district court's decision, the Ninth Circuit stated that "[t]he ALJ did not articulate how he evaluated the statement of a Social Security Administration employee[;] [h]owever, an ALJ is 'not required to articulate how [she] considered evidence from nonmedical sources' under the new regulations." *Kennedy*, 2024 WL 242992, at *2 (quoting 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). Immediately thereafter, the Ninth Circuit stated that "even assuming [the ALJ did err], any error was harmless . . . [, as] [n]othing in the statement

about the employee's interaction with [the claimant] would alter any of the ALJ's conclusions based upon objective medical evidence." *Id.*

About one year earlier, the Ninth Circuit stated (albeit in a footnote of an unpublished opinion) that the new regulations make it clear that ALJs are no longer required to articulate in their decisions how they considered evidence from lay witnesses. *See Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *1 n.1 (9th Cir. Dec. 27, 2022) ("It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." (citing *Johnson v. Kijakazi*, No. 21-35755, 2022 WL 3998572, at *2 (9th Cir. Sept. 1, 2022))); *see also Johnson*, 2022 WL 3998572, at *2 (finding it unnecessary to address the Commissioner's argument that "under the new, 2017 regulations, the ALJ does not need to discuss 'non-medical sources' in [his] decision").

Like *Kennedy*, some district courts in this circuit have "concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony." *Tracy Q. v. Kijakazi*, No. 6:22-cv-00692-SI, 2024 WL 706963, at *7 (D. Or. Feb. 21, 2024) (citing *Evans v. Comm'r of Soc. Sec.*, No. 2:22-cv-00435, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023)); *see also Evans*, 2023 WL 3570083, at *9 ("[T]he new regulations only require consideration of these statements, not articulation. . . . Portions of [the caregiver's] statement are discussed throughout the decision, such that the undersigned is satisfied the ALJ met his duty to consider this evidence." (citing 20 C.F.R. § 404.1520c(d))). Although some district courts have held otherwise, the "majority of district courts in this circuit," including this Court, have "conclude[d] that the new regulations have not eliminated an ALJ's obligation to consider and address lay

witness testimony." *Tracy Q.*, 2024 WL 706963, at *7 (citing, *inter alia*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023) and *Joseph L. S. v. Kijakazi*, No. 5:23-cv-00006, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023)).

In reaching the same conclusion, the district court in *Tracy Q.* explained that the new regulations are not "clearly irreconcilable" with existing caselaw and insufficient to overrule binding circuit precedent:

> On the Court's reading, the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. The revised regulations describe how to evaluate *medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony is *not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods v. Kijakazi*, 32 F.4th 785, 790 (9th Cir. 2022) ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations."). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L. S.*, 2023 WL 5611408, at *5 (citing 20 C.F.R. §§ 416.913(a), 416.929(a)). The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work[,] 20 C.F.R. § 404.1513(e)(2)." (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the [c]ourt to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, No. 22-cv-1821, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

*Tracy Q.*, 2024 WL 706963, at *8 (footnotes omitted).[7]

In addition to this Court and the district judge in *Tracy Q.*, several other judges from this district have concluded that the new regulations have not eliminated an ALJ's obligation to articulate their assessment of lay witness testimony. *See Liesa M-B v. Comm'r, Soc. Sec. Admin.*, No. 1:22-cv-01213-MK, 2024 WL 1007886, at *7 (D. Or. Mar. 8, 2024) ("[The Commissioner] suggests it is an 'open question' whether ALJs are still required to consider lay witness evidence under the revised regulations, . . . [but] this Court still requires ALJs to provide germane reasons for dismissing lay witness testimony."); *Tonyia P. v. Comm'r, Soc. Sec. Admin.*, No. 6:20-cv-00942-MO, 2024 WL 36713, at *2 (D. Or. Jan. 3, 2024) ("Under the new regulations, . . . the ALJ must still articulate their assessment of lay witness statements." (citing *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F. Supp. 3d 858, 869-70 (D. Or. 2021) (Brown, J.))); *Janet M. v. Comm'r Soc. Sec. Admin.*, No. 6:21-cv-00725-AR, 2023 WL 3318777, at *6 (D. Or. May 9, 2023) (same); *Christopher K. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1041, 1049 (D. Or. 2023) (Hernández, J.) (same).

### B.    Analysis

The Court finds that the ALJ was required but failed to provide germane reasons for rejecting Plaintiff's brother's lay witness testimony. The Court also finds that any error was harmless.

As an initial matter, because the Commissioner does not address other applicable regulations that remain intact after March 27, 2017, the effective date of the new regulations, he

---

[7] The Court notes that the district court in *Joseph L.S.* "cited the regulatory provisions applicable to Title XVI claims—the same regulatory provisions applicable to Title II claims are in 20 C.F.R. §§ 404.1513, 404.1529." *Tracy Q.*, 2024 WL 706963, at *8 n.6. The Court also notes that "[t]he requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4)." *Id.* at *8 n.7.

fails adequately to demonstrate that the new regulations are "clearly irreconcilable" with existing caselaw. (*See* Def.'s Br. at 15-20.) Accordingly, the Court adheres to its previous holding that ALJs are still required to articulate their assessment of lay witness testimony. *See Christopher M.*, 2023 WL 8827678, at *10 ("Under the new regulations, . . . the ALJ must still articulate their assessment of lay witness statements."); *see also Lance A. v. Kijakazi*, No. 6:21-cv-00723-SB, 2023 WL 2728861, at *3 (D. Or. Mar. 31, 2023) (describing the legal standard applicable to lay witness testimony and noting that a judge from this district held that "ALJs 'must continue to give germane reasons for discounting lay witness testimony' and conclud[ed] that 'under the new regulations . . . an ALJ's failure to address lay testimony is error'" (quoting *Kimberly T. v. Kijakazi*, No. 3:20-cv-01543-SI, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022))); *Joseph B. v. O'Malley*, No. 2:23-cv-00750-SI, 2024 WL 1636525, at *9 (D. Or. Apr. 16, 2024) ("The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. This Court repeatedly has rejected this argument and still requires ALJs to provide a germane reason to reject lay witness testimony.").

Nevertheless, the Court agrees with the Commissioner that any error was harmless under the circumstances. When an ALJ fails to address lay witness testimony, the ALJ's error is harmless if the lay witness's testimony was sufficiently similar to the claimant's symptom testimony, which the ALJ properly discounted. *See Stephens*, 2023 WL 6937296, at *2 (finding harmless error because the lay witnesses "provided statements that were similar to [the claimant's] subjective complaints, which the ALJ reasonably rejected," and explaining that "when 'the ALJ provide[s] clear and convincing reasons for rejecting [the claimant's] own subjective complaints,' 'it follows that the ALJ also gave germane reasons for rejecting [lay

witness] testimony' that 'was similar to such complaints'" (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009))); *Johnson*, 2022 WL 3998572, at *2 ("Because the lay witness statements were largely duplicative of [the claimant's] own testimony, the ALJ's failure to address the statements was inconsequential and therefore harmless.") (citations omitted).

Plaintiff's brother's lay witness testimony was similar to (and in many ways duplicative of) Plaintiff's symptom testimony, which, as discussed, the ALJ properly discounted. (*Compare* Tr. 267-75, *with* Tr. 63-79, *and* Tr. 245-52.) As a result, the ALJ's failure to address Plaintiff's brother's lay witness testimony amounts to harmless error because the ALJ's reasons for discounting Plaintiff's testimony apply with equal force to Plaintiff's brother's testimony. *See Eric T. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-00542-IM, 2024 WL 1155383, at *5 (D. Or. Mar. 18, 2024) ("Even assuming that the 'germane' reasons requirement applies here and that the ALJ violated it, the ALJ committed harmless error because his reasons for rejecting Plaintiff's subjective testimony apply with equal force to the testimony provided by Plaintiff's wife.").

## III.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's discounting of the opinions from Plaintiff's physician's assistant, Chin. (Pl.'s Opening Br. at 7-9.) The Court disagrees.

### A.    Applicable Law

As the parties acknowledge (*see* Pl.'s Br. at 7; Def.'s Br. at 4), the new regulations apply here because Plaintiff filed his application after March 27, 2017.[8] *See Woods*, 32 F.4th at 787-92

---

[8] The Ninth Circuit recently held that the new regulations are valid under the Social Security Act and Administrative Procedures Act. *See Cross v. O'Malley*, 89 F.4th 1211, 1215-17 (9th Cir. 2024).

(observing that "[t]he new regulations apply to [a claimant's Social Security case if] she filed her claim on or after March 27, 2017," and that the new regulations displace the "irreconcilable" and "incompatible" specific and legitimate reasons standard); *see also Petritz v. Kijakazi*, No. 22-35155, 2022 WL 17592191, at *1 (9th Cir. 2022) (explaining that "the standard under the new regulations . . . [did] not apply to [the claimant's] case because [he] filed his application for benefits before [March 27,] 2017" (citing *Woods*, 32 F.4th at 789)).

Under the new regulations, "'[t]he most important factors' that [an ALJ] considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" *id.* at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)), and consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). An ALJ "must 'articulate . . . how persuasive' [he] finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [he] considered the supportability and consistency factors' in reaching [his] findings.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(b), 404.1520c(b)(2)).

The new regulations reflect that an ALJ is not required to make specific findings regarding a medical source's relationship with the claimant, i.e., "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's record." *Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(3)(i)-(v)). Nor is an ALJ required to make findings regarding specialization or "other factors that tend to support or contradict a medical opinion[, such as the

medical source's] familiarity with the other evidence in the claim or . . . understanding

of . . . disability program[] policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(b)(2),

404.1520c(c)(4)-(5).

If, however, an ALJ finds that medical opinions "about the same issue are both equally

well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ] will

articulate how [he] considered the . . . factors in paragraphs (c)(3) through (c)(5)." *Id.*

§ 404.1520c(b)(3). Those factors are the medical source's relationship with the claimant,

specialization, and facts that tend to support or contradict a medical source's opinion. *Id.*

§ 404.1520c(c)(3)-(5).

A district court reviews the ALJ's evaluation of a medical opinion for substantial

evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision,

including the decision to discredit any medical opinion, must simply be supported by substantial

evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at

*1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's

evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at

789)).

### B.    Analysis

#### 1.    Chin's Opinion

On August 18, 2020, Chin completed a declaration in support of Plaintiff's application

for benefits. (Tr. 884-86.) In his declaration, Chin explained that his opinions, which addressed

Plaintiff's "functional limitations in a sustained work setting," were based on his "examination

and treatment of [Plaintiff], and [his] understanding of [Plaintiff's] medical history." (*Id.* at 884.)

Chin also explained that (1) although Plaintiff's seizures are "well controlled by Keppra," Plaintiff's seizure "conditions remains, and he should not be working at any height and should not work on ladders and scaffolding," (2) because of Plaintiff's post-impingement surgery "shoulder condition and bilateral hand arthritis," Plaintiff needs to be "limited to lifting at most [twenty-five] pounds occasionally during an eight-hour workday," and (3) Plaintiff's "scaphoid bone arthritis and shoulder condition . . . significantly limit[] his ability to reach with the left arm, as well [as his] gross manipulation and handling, and fine finger manipulation." (*Id.* at 884-85.)

### 2.    The ALJ's Decision

To the extent that Chin opined that Plaintiff should not be exposed to workplace hazards, such as unprotected heights, the ALJ determined that Chin's opinion was "somewhat persuasive." (*See* Tr. 50, finding "somewhat persuasive" Chin's opinion "for no heights"). The ALJ, however, explained that the record did not support other portions of Chin's opinion. For example, in finding unpersuasive Chin's opinion on Plaintiff's lifting restrictions, the ALJ noted that Plaintiff exhibited full grip strength bilaterally on exam, Plaintiff underwent arthroscopic surgery for impingement syndrome in June 2017, and Plaintiff's post-surgery "shoulder motion" and "arm swing [were] normal." (*Id.*) The ALJ also explained that Chin's opinion was "contradicted by the [s]tate agency doctors, who limit[ed] [Plaintiff] to medium [exertion] work," and whose opinions the ALJ "preferred because [the state agency physicians] have greater expertise as medical doctors." (*Id.*) The ALJ added that Chin's opinion was "contradicted by the opinion of [Plaintiff's] treating [neurologist], Dr. Rosenbaum, who provided no exertional limits." (*Id.*)

///

///

### 3.    Disposition

The Court concludes that substantial evidence supports the ALJ's discounting of Chin's opinion.

In arguing that substantial evidence does not support the ALJ's discounting of Chin's opinion, Plaintiff emphasizes that unlike Chin, "[n]one of the state agency doctors . . . ever examined Plaintiff at all." (Pl.'s Opening Br. at 9.) Even if the state agency physicians did not personally examine Plaintiff, it was appropriate for the ALJ to discount Chin's opinion on the ground that it was inconsistent with the state agency physician's opinions. *See Bauman v. O'Malley*, No. 22-35881, 2024 WL 1427037, at *2 (9th Cir. Apr. 3, 2024) (holding that substantial evidence supported the ALJ's assessment of a nurse practitioner's opinion, and noting that the nurse practitioner's opinion "contradicted findings made by the [s]tate agency medical consultants").

Plaintiff also argues that to the extent the ALJ discounted Chin's opinion on Plaintiff's shoulder and hand limitations, the ALJ improperly (1) compared Chin's opinion to the opinion of a neurologist (i.e., Dr. Rosenbaum), and (2) relied on physical exam results from medical visits that were not about Plaintiff's shoulder or hands (i.e., referrals to a neurologist and otolaryngologist about seizures and symptoms of cerumen impaction and balance, respectively). (*See* Pl.'s Opening Br. at 8-9, citing Tr. 539, 821, 895, 907.) The Court finds this argument unpersuasive.

It is true that Plaintiff's shoulder and hands were not the focus of the referral visits on which the ALJ relied. (*See* Tr. 822, February 19, 2019, Plaintiff presented for a referral regarding his seizures and the provider found that Plaintiff exhibited "[n]ormal shrug bilateral," a "normal [gait] with appropriate arm swing," "[n]ormal [muscle] tone in all groups," and full strength; *id.* at 894-95, 906-07, November 16, 2020, Plaintiff presented for a referral regarding his ability to

balance and symptoms of cerumen impacting contributing to hearing difficulties, and the

otolaryngologist noted that Plaintiff's muscle mass, gait, and "[s]houlder motion [were] normal";

*see also* Tr. 538-39, April 18, 2019, Plaintiff's physician noted that Plaintiff exhibited

"osteoarthrosis changes [of the proximal interphalangeal] with swelling along the joints" but

Plaintiff also exhibited full hand strength bilaterally and reported that he performed "hand

exercises on a daily basis to keep strength," and Plaintiff's provider "[d]iscussed conservative

treatment"). It is also true that Plaintiff does not dispute or respond to the Commissioner's

argument that Plaintiff fails to "point to any medical evidence from . . . Chin or other medical

sources that support his claim for further shoulder and hand restrictions." (Def.'s Br. at 7, citing

Pl.'s Opening Br. at 8-9; Pl.'s Resp. at 4-6, repeating the same initial arguments from Plaintiff's

opening brief).

      Plaintiff's failure to do so is significant because Plaintiff's medical records from Chin

and others do not appear to include much noteworthy information on Plaintiff's hand and post-

surgery shoulder conditions and limitations. This suggests, among other things, that Plaintiff

underwent successful shoulder surgery before the alleged disability onset date and Plaintiff's

treatment of his hands was largely effective. The evidence to the contrary appears to consist

primarily of Plaintiff's self-reports, which the ALJ properly discounted. Given these facts, the

Court finds that the ALJ did not err in discounting Chin's opinion on the ground that it was

inconsistent with Plaintiff's post-surgery and onset date medical records. *See Delgadillo v.*

*Kijakazi*, No. 20-56211, 2022 WL 301548, at *2 (9th Cir. Feb. 1, 2022) (noting that the record

evidence reflected that the claimant "successfully underwent surgery" and holding that that the

ALJ did not err in relying on the state agency medical consultant's assessment to formulate the

RFC, even though, unlike here, the state agency medical consultant "did not review post-operative records").

For all of these reasons, the Court finds that substantial evidence supports the ALJ's partial discounting of Chin's opinion. *See Delgadillo*, 2022 WL 301548, at *1 (noting a state agency consultant's opinion, coupled with other consistent evidence or independent clinical findings, satisfies the substantial evidence standard); *Vazquez*, 2023 WL 5453198, at *1 ("[T]he ALJ's alternative interpretation . . . is at least equally rational, and the reasoning is legally sufficient."); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (simplified).

## IV.   TRANSFERRABLE WORK SKILLS

Plaintiff's remaining argument is that the ALJ erred in finding that Plaintiff acquired transferrable skills from his past relevant work experience. (Pl.'s Opening Br. at 5-7; Pl.'s Reply at 1-4.)

At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that Plaintiff could perform, including *medium* work as a hospital housekeeper, food tray assembler, and lot attendant. (*Id.* at 51.) In the alternative, the ALJ explained that given the VE's testimony about Plaintiff's "transferrable skills from his past work[, which] include[s] knowledge of HVAC supplies and equipment, [Plaintiff] can do the *light* exertion job of HVAC materials supply salesperson[.]" (*Id.*) (emphasis added).

Plaintiff represents that his remaining assignment of error depends on his arguments that the ALJ harmfully erred in discounting Chin's opinion, Plaintiff's testimony, and Plaintiff's brother's lay witness testimony. (*See* Pl.'s Reply Br. at 10, stating that "[a]ccepting . . . Chin's

opinion that Plaintiff is limited to light work would mean that in the absence of transferrable

skills, a finding of disability . . . would be appropriate [under the grids]," and adding that

Plaintiff's symptom testimony and Plaintiff's brother's lay witness testimony also "established

that Plaintiff would have disabling limitations"). The Court finds that substantial evidence

supports the ALJ's discounting of this evidence and thus agrees with the Commissioner that it

does not need to address any dispute about the ALJ's finding of transferrable skills. (*See* Def.'s

Br. at 20.)

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is

free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 11th day of June, 2024.

HON. STACIE F. BECKERMAN
United States Magistrate Judge